IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **Sarah Morrison,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | _____ |
| **PFSweb, Inc.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

# PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Sarah Morrison ("Plaintiff" or "Morrison") hereby files her Original Complaint against Defendant PFSweb, Inc. ("Defendant" or "PFS"), as follows:

## I.
## SUMMARY OF CLAIMS

1.  While employed by Defendant, Plaintiff suffered discrimination and retaliation, in violation of Title VII, 42 U.S.C. Section 2000e - 2000e-17 (1994). Plaintiff began her career for PFS as a bright and hard-working employee. However, in the spring of 2016, Morrison's direct supervisor Mike Garcia ("Garcia") subjected her to discriminatory and disparaging treatment. Morrison wished to continue her work at PFS and reported Garcia's behavior to the Human Resources Department, following company protocol, in the hope that the company would remedy Garcia's inappropriate conduct and work to create a safe work environment.

2.  Unfortunately, Morrison's hopes were soon dashed. Instead of correcting the discriminatory conduct, the Human Resources Department informed Garcia of Morrison's complaint and allowed him to retaliate. In direct retaliation, Garcia fired her.

3. Under federal law, employers are required to investigate and remedy acts of discrimination by their agents and supervisors. Federal law ensures employees that when they face discrimination in the workplace, they can safely report the conduct so that the company may remedy it. Unfortunately, PFS instead responded to Morrison's report by retaliating against her. In firing Morrison, PFS terminated the whistleblower who had been brave enough to shed light on Garcia's wrongful conduct. Now, Garcia remains employed by PFS, while Morrison has suffered the economic and emotional consequences of job loss.

4. Therefore, Plaintiff requests that the Court hold Defendant liable for its discriminatory and retaliatory conduct, enter judgment against Defendant, and award Plaintiff all monetary damages and other relief to which she is justly entitled.

## II.
## PARTIES

5. Plaintiff Sarah Morrison is a natural person residing in Collin County, Texas. She can be served with process through her undersigned counsel of record. Plaintiff is a former employee of Defendant PFS.

6. Upon information and belief, Defendant PFS is a Delaware corporation employing more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year. PFS is the former employer of Plaintiff and is an entity engaged in an industry affecting interstate commerce. PFS maintains its worldwide corporate headquarters at 505 Millennium Drive, Allen, Collin County, Texas 75013. PFS may be served with process via its registered agent Gib Dawson at the same address. Upon information and belief, PFS acquired CrossView, Inc. on or about August 5, 2015, and is the successor entity to CrossView, Inc. PFS is the former employer of Plaintiff.

**ORIGINAL COMPLAINT**

## III.
## VENUE AND JURISDICTION

7. Venue is proper in this district and division under 28 U.S.C. Section 1391 because it is the judicial district and division in which a substantial part of the events or omissions giving rise to the claim occurred. Morrison was a PFS employee working out of the Allen, Texas office. Her supervisors, including Mike Garcia, were also stationed at this office location. Morrison experienced inappropriate and unlawful conduct by her supervisor at the Millennium Drive office and reported such conduct at the same location. PFS, through its North Texas agents and/or employees, retaliated against Morrison and terminated her employment.

8. Under 28 U.S.C. Section 1331, the Court has original jurisdiction over this matter because Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e—2000e-17 (1994), as amended by the Civil Rights Act of 1991 ("Title VII"). Defendant PFS is the former employer of Plaintiff and is subject to liability under Title VII.

9. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Additionally, the Court has jurisdiction over this controversy because Morrison has exhausted all required administrative remedies. Before filing suit, Morrison filed a timely, pro se Title VII charge of retaliation based on discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). Morrison made a good faith effort to cooperate with the EEOC during its investigation. The EEOC issued a Notice of Suit Rights on September 13, 2016, and Morrison received such notice of her right to sue on September 16, 2016.

## IV.
## FACTS

11. Plaintiff Sarah Morrison was hired to work as an Inside Sales Representative for PFS (f/k/a CrossView, Inc.) on or about October 19, 2015. In this role, she was paid a base salary with the potential for certain bonus awards. Morrison had an impressive resume, work ethic, and the right skill set for the job.

12. Around the time of Morrison's hiring, the company was undergoing structural and managerial changes, related to PFS's acquisition of CrossView, Inc. Later, Morrison's title became Business Development Representative.

13. While an employee of PFS, Morrison handled business development. Morrison contacted target clients and built relationships through phone calls and other communications, directing potential business to PFS leaders. Her supervisors and colleagues recognized her good work. The company awarded her a "Crossy Award" for her successful efforts in driving attendance to a critical marketing event in Charlotte, North Carolina. Morrison contacted leaders at Fortune 500 companies and secured their attendance at the event, enabling PFS leaders and managers to develop relationships and sales. Morrison was on track for a successful career at PFS.

14. Unfortunately, her career was derailed shortly thereafter. Due to the company's changing structure, Morrison began spending more work time with Garcia, one of her immediate supervisors. Unfortunately, Garcia held female employees in low regard comparatively to male employees. His discriminatory preference revealed itself in occasional inappropriate remarks, his lack of mentoring toward Plaintiff, and his failure to provide meaningful job opportunities to Plaintiff.

15. On or about March 21, 2016, Garcia verbally attacked Morrison with inappropriate, anti-female language and hostile, aggressive action. On this morning, Garcia, the Sales Operation Manager, led a weekly meeting. During the meeting, Morrison asked Garcia a question about the marketing strategy. Unfortunately for Morrison, Garcia disliked being questioned by a woman. He immediately switched to an angry, aggressive tone and asked everyone but Morrison to leave the room. Once he was alone with Morrison, Garcia escalated the conversation to an inappropriate level and referred to Morrison using the derogatory term "b----."

16. Morrison is a warm, polite, and professional worker. She was taken aback and distressed by Garcia's offensive, anti-female language and behavior and attempted to de-escalate the situation by volunteering to leave the room. In response, Garcia sought to prevent her exit. He shouted, "You work for me! You can't leave!" He accompanied his shouts with aggressive, physical gestures. Tellingly, Garcia did not behave aggressively and inappropriately in this manner toward his male direct reports, nor did he shout offensive language at any of Plaintiff's male colleagues. Instead, Garcia's unfavorable treatment targeted Morrison as a woman, and his comments were laced with his offensive and hostile view of women in the workplace.

17. Garcia's words and actions left Morrison feeling frightened, uncomfortable, and distressed. She wanted to continue her work for PFS, but she worried about Garcia's behavior toward her and his derogatory remarks, including referring to a woman as a "b----." Morrison turned to PFS's Human Resources ("HR") Department for aid. She decided to notify the appropriate HR contact to make a formal complaint, in

**ORIGINAL COMPLAINT**

accordance with company guidelines. Morrison hoped that HR would provide guidance and be able to resolve Garcia's discriminatory conduct before it progressed further.

18.     Therefore, on or about March 28, 2016, Morrison reported Garcia's inappropriate and discriminatory conduct to Mary Demple, PFS's Vice President of HR. In making her formal complaint, Morrison notified HR that, among other conduct, Garcia had made anti-female comments, that Garcia referred to her as a "b----," and that his aggressive, physical maneuvers made Morrison feel unsafe when alone with him. Morrison desired to continue her work for PFS in a safe, unhostile environment.

19.     Instead, only a few days after her formal complaint, Garcia, with the assistance of HR, began to execute his retaliatory scheme.

20.     PFS made no attempt to correct its manager's inappropriate and discriminatory behavior. Instead, the company informed Garcia of Morrison's complaint and enabled him to retaliate. Garcia immediately began to plan his retaliation. Garcia became angry that Morrison had made a formal complaint about his discrimination and wanted to get rid of the whistleblower. With the assistance of HR, he began executing his retaliatory scheme straight away.

21.     On or about April 6, 2016, mere days after Morrison reported the discrimination to HR, Garcia called Morrison into an office room and informed her that he was placing her on a Performance Plan. This Performance Plan was no opportunity for Morrison. It was a thinly disguised Termination Plan. Prior to reporting her complaint about Garcia's conduct, Morrison had received good reviews and an award for her performance. The company had never had any cause or desire to terminate her, and her performance was consistent with or better than that of her peers and colleagues.

Therefore, the Performance Plan surprised Morrison. Rather than providing opportunities for improving her performance, it set forth unattainable and ambiguous benchmarks, which were to be subjectively judged and impacted by Garcia. Rather than providing mentorship, supervision, and opportunities as Morrison's supervisor, Garcia sought to prevent Morrison's success in retaliation for her reporting his conduct.

22. Morrison was deeply upset to learn that the company had responded to her complaint by punishing her and feared that she would be fired as well. She became distressed and anxious about her financial well-being and her career. Nonetheless, she endeavored to succeed at PFS and continued working hard for the company. She hoped that she would have the opportunity to advance her career at PFS.

23. Instead, on or about May 5, 2016, PFS fired Morrison. Garcia called Morrison into a conference room and notified her of her termination. PFS terminated Morrison because she had suffered and reported Garcia's discriminatory actions, not because of her performance, which was consistent with or better than her peers' performance and company expectations. To cover-up his retaliation and prevent Morrison from exercising her rights under federal and state law, Garcia attempted to coerce Morrison into signing a release agreement. On behalf of PFS, Garcia offered Morrison a monetary payment in exchange for her signature to a document which falsely represented that she was fired for performance reasons. Morrison did not take the bait, and instead refused to sign her name to the false statements. Morrison left the company that day as instructed.

24. Because of PFS's retaliatory firing, Morrison became unemployed and lost her wages and financial stability. Additionally, Morrison suffered stress-related health problems as a result of Garcia's and PFS's actions.

## V.
## COUNT 1: DISCRIMINATION

25. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

26. Defendant engaged in sex-based discrimination and/or harassment based on Plaintiff's sex. In or about March 2016, Garcia confronted and attacked Morrison with anti-female language and aggressive, physical behavior. Garcia treated Morrison in a threatening, unfavorable way on the basis of her sex, which was inconsistent with the way he treated his male employees. Garcia and/or other PFS managers created a sexist work culture, hostile to women. Garcia made offensive and sexist remarks based on Morrison's gender, including referring to her as a "b----." These remarks, coupled with Garcia's aggressive, physical actions and denial of meaningful opportunities, constituted discrimination and/or harassment.

27. Garcia's offensive and discriminatory treatment of Morrison resulted in an adverse employment decision. Garcia's conduct escalated from shouting offensive remarks in an aggressive confrontation to outright terminating Morrison. After Morrison reported Garcia's behavior, Garcia placed her on a Performance Plan and then, as intended all along, promptly fired her.

28. As a direct and proximate result of the foregoing, Plaintiff has suffered damages, including lost wages, lost earning capacity, mental anguish, emotional pain and suffering, lost employment benefits, inconvenience, loss of enjoyment of life, damage to professional reputation, medical bills, and other damages. Plaintiff is also entitled to

**ORIGINAL COMPLAINT**

recover an award of attorneys' fees and costs, including expert fees, pursuant to 42 U.S.C. Section 2000e-5(k).

## VI.
## COUNT II: RETALIATION

29. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

30. Plaintiff engaged in a protected activity under Title VII (42 U.S.C. § 2000e-3(a)). Morrison opposed a practice that violates Title VII and made a complaint about that practice. Morrison reasonably believed Garcia's actions to constitute discrimination on the basis of sex, in violation of Title VII (42 U.S.C. § 2000e-2(a)). Morrison opposed Garcia's conduct, and, in reliance on her belief that his actions were wrongful and discriminatory, she reported the conduct to another manager and the company's HR Department.

31. As a direct and proximate result of Morrison's reporting Garcia's discriminatory conduct, the company took adverse employment action against her. PFS terminated her. But for her engagement in a protected activity, PFS would not have terminated her employment.

32. Plaintiff's retaliation has damaged Plaintiff. As a direct and proximate result of the foregoing, Plaintiff has suffered damages, including lost wages, lost earning capacity, mental anguish, emotional pain and suffering, lost employment benefits, inconvenience, loss of enjoyment of life, damage to professional reputation, medical bills, and other damages. Plaintiff is also entitled to recover an award of attorneys' fees and costs, including expert fees, pursuant to 42 U.S.C. Section 2000e-5(k).

## VII.
## PRAYER FOR RELIEF

For the above reasons, Plaintiff asks for judgment against Defendant for the following:

(a) Plaintiff's actual and consequential damages in an amount to be proven at trial;

(b) Plaintiff's reasonable attorneys' fees and costs of suit in an amount to be proven at trial;

(c) Prejudgment and postjudgment interest; and

(d) All other and further relief, at law or in equity, which the Court deems appropriate.

December 7, 2016

Respectfully submitted,

KECHEJIAN LAW PC

/s/ Rachel L. Kechejian
Rachel L. Kechejian
State Bar No. 24067175
rachel@kechejianlaw.com
5414 Forest Lane, Suite 100
Dallas, TX 75244
Telephone: (214) 550-2858
Facsimile: (214)550-2856

**COUNSEL FOR PLAINTIFF SARAH MORRISON**

**ORIGINAL COMPLAINT**